**Ray J. FOX and Nellie M. Fox, husband and wife, Plaintiffs,**

v.

**NORTHWESTERN MUTUAL LIFE IN-SURANCE COMPANY OF MILWAU-KEE, WISCONSIN, Defendant.**

No. 3177.

United States District Court
D. Idaho, S. D.

Jan. 13, 1956.

Donart & Donart, Weiser, Idaho, for plaintiffs.

Homer E. Martin, Boise, Idaho, for defendant.

TAYLOR, District Judge.

This cause is presently before the Court on the issues of law raised by the first paragraph of defendant's first affirmative defense to each of plaintiffs' causes of action contained in their complaint. The first paragraph of each affirmative defense alleges that the cause of action to which it is directed "fails to state any fact or facts sufficient to constitute a cause of action against the defendant." Said first paragraph of each affirmative defense has, for all intents and purposes, been considered by counsel as a motion to dismiss, and will be so considered by the Court.

Oral argument was heard in open court on November 23, 1955, on said issues of law, and at the conclusion thereof the matter was taken under advisement by the Court, and counsel granted time within which to present briefs.

This action was removed from the District Court of the Seventh Judicial District of the State of Idaho, in and for the County of Washington, to this Court, which has jurisdiction by virtue of 28 U.S.C.A. § 1332.

It appears that on or about February 16, 1923, one Wayne Fox, son of the plaintiffs in this action, entered into a written contract of insurance with the defendant corporation, being Policy No. 1638318, wherein it was provided that in consideration of an annual premium of $308.60, and provided that the same was paid each year for a period of 30 years, defendant insurance company would pay to the said Wayne Fox, if living, the sum of $10,000. Plaintiffs were named as beneficiaries, in the event insured died prior to the end of the said 30-year period. The policy also provided that the insured had the "right * * * to elect payment of the net proceeds of this Policy, in whole or in part, under either Option 'A,' 'B,' or 'C,' or under two or more of said options," in lieu of payment of the face amount of the policy.

Wayne Fox complied with all the terms and provisions of the policy, and paid defendant insurance company thirty annual premiums, each in the amount of $308.60. Thus under the terms of the said policy the sum of $10,000, plus a final dividend of $41.20, or a total of $10,041.20, became due to the insured on February 16, 1953.

On February 7, 1953, Wayne Fox and the defendant insurance company entered into a written Settlement Option Election and Designation, which was thereupon attached to the policy. Under the terms of said settlement the insured elected to accept "Option C," instead of receiving a cash settlement in the face amount of the policy. The insured, under the provisions of Option C, was guaranteed a quarterly payment of $157.55 for a period of 10 years under any circumstances, and for as long thereafter as he might live.

Wayne Fox died on September 14, 1954. He had received, prior to his death, $1,102.85 under the provisions of Option C. Plaintiffs seek $8,938.35 in this action, which they allege is due and owing them as contingent beneficiaries under said insurance policy.

Wayne Fox, under the terms and provisions of Policy No. 1638318, had the right to elect the following methods of settlement: (1) the payment by the insurer of $10,041.20, or, (2) "payment of the net proceeds of this Policy, in whole or in part, under either Option 'A,' 'B,' or 'C,' or under two or more of said options." He selected Option C, which provided that the "settlement of the net proceeds (including any final dividend)" should be paid "in quarterly installments certain for 10 years, without the privilege of commutation." Thus the insured selected but one of the many possible methods of final settlement provided in the contract of insurance. He could have elected to take the $10,041.20; he chose, instead, payment of annuities as provided for by Option C.

The insured was not obligated to exercise any of the options contained in said policy, but elected to do so. It must be kept in mind that it was his option, and not an option to be exercised on the part of the insurance company. In exercising said option insured apparently gambled that he would live at least another 16 years, or until he was 62 years of age. Had he continued to live, he would have received $10,083.20 during said 16-year period, and thereafter he would have been paid $157.55 each quarter year for the rest of his life.

Plaintiffs contend that the provision for settlement under Option C of the policy is contrary to § 41–1504, Idaho Code, and thus contrary to the public policy of the State of Idaho.

Section 41–1504, Idaho Code, provides as follows:

"Life and endowment policies—Prohibited provisions.—No policy of life or endowment insurance shall be issued or delivered in this state, or be issued by a life insurance company organized under the laws of this state, if it contain any of the following provisions:

\*   \*   \*   \*   \*   \*

"3. A provision by which the settlement at the maturity of any policy after the expiration of the contestable period thereof, *shall be of less value than the amount insured on the face of the policy* plus dividend additions, if any, less any indebtedness to the company on or secured by the policy and less any premium that may, by the terms of the policy, be deducted. This paragraph shall not apply to substandard policies, nor to any nonforfeiture provision which employs the cash value less indebtedness, if any, to purchase automatic paid up or extended insurance." (Emphasis added.)

As heretofore stated, the insured elected, at the end of the 30-year period, to purchase an annuity with the proceeds of the matured policy rather than accept the outright payment in currency of the face value of the policy. Did this purchase of an annuity by the insured, under the provisions of Option C of the policy, constitute a settlement "of less value than the amount insured on the face of the policy?"

The Supreme Court of Idaho has not had occasion to rule on this question. This Court's attention has, however, been directed to the decisions of various other states having the same, or a similar, statute.

The obvious purpose of such a statute as § 41–1504, I.C., is set forth in Provident Life & Accident Ins. Co. v. Deckard, Tex.Civ.App., 179 S.W.2d 828, 830, in which the Supreme Court of Texas declared:

"The purpose of the foregoing enactment was, as tersely stated in First Texas State Ins. Co. v. Smalley, 111 Tex. 68, 228 S.W. 550, to render contracts as to benefits from life insurance simple and easily understood, and to prevent the misleading of the unwary by promise of insurance in certain amounts on the face of the policy so limited and conditioned thereafter as to have slight or no actual value."

In Greevy v. Massachusetts Mut. Life Ins. Co., 128 Neb. 586, 259 N.W. 656, at page 657, the Supreme Court of Nebraska said:

"Plaintiff argues that the settlement or supplemental agreement violates public policy as declared by the statute. The point does not seem to be well taken. *The restrictions imposed by the statutory provisions quoted apply to the terms of the policy, not to a settlement for a life annuity after liability for a definite amount of life insurance accrued.* In the case at bar the parties agree on the exact amount due the beneficiary at the time of insured's death. Whether full payment should be made in a lump sum in currency or in the form of a life annuity was the subject matter of negotiations resulting in the supplemental agree-

ment. With the unpaid proceeds of the insurance, the beneficiary had a right to enter into a contract for a life annuity. The insurer was engaged in the business of selling annuities and had in its hands belonging to the beneficiary the purchase price of a life annuity. The terms of what amounted to the sale and purchase of a life annuity were stated in the supplemental agreement. Responsible insurers and men of affairs are constantly entering into contracts for annuities on recognized principles. Responsibility for investments may be thus transferred from inexperienced individuals to capitalized corporations utilizing the services of experts in finance. *The supplemental agreement is fair on its face and does not conflict with the statute.*" (Emphasis added.)

As the Nebraska statute is identical with § 41–1504, I.C., it seems reasonable to assume that the Supreme Court of Idaho would, if faced with the question presented by the case at bar, decide said question as did the Supreme Court of Nebraska in Greevy v. Massachusetts Mut. Life Ins. Co., supra.

 The insured could have accepted the $10,041.20 in currency and then, in a separate transaction, purchased the annuity. The selection of Option C was but a more expeditious means of accomplishing the same result. "In the absence of fraud, mere inadequacy of consideration does not affect the validity of an annuity contract as such." 3 C.J.S., Annuities, § 2 b (2); 2 Am.Jur., Annuities, § 10.1.

It seems clear that the terms and provisions of the policy do not contravene § 41–1504, I.C., and therefore said policy is not contrary to the public policy of the State of Idaho. Accordingly, plaintiffs' first cause of action fails to state a claim against defendant insurance company upon which relief can be granted. Therefore, it is ordered that said cause of action be, and the same is hereby dismissed.

The question as to whether the insurance company's agent made fraudulent representations to insured, and thereby induced the latter to sign the said Settlement Option Election and Designation, must be determined from the evidence. Accordingly, plaintiffs' second cause of action states a claim against defendant insurance company upon which relief may be granted.